575 P.2d 1347

**Sandra SHAHAN, on behalf of herself as the dependent widow of Ronnie Shahan, and on behalf of the dependent children of Ronnie Shahan, Plaintiff-Appellee,**

**Glenda Shahan, on behalf of the dependent children of Ronnie Shahan, Plaintiff-Appellant,**

**v.**

**BEASLEY HOT SHOT SERVICE, INC., and Reliance Insurance Companies, Defendants-Appellees.**

**No. 3155.**

Court of Appeals of New Mexico.

Jan. 31, 1978.

Writ of Certiorari Denied March 7, 1978.

Patrick L. Chowning, Patrick L. Chowning & Associates, Albuquerque, Robert H. Mitchell, Oklahoma City, Okl., for plaintiff-appellant.

Leof T. Strand, Melvin L. Robins, Albuquerque, for appellee Sandra Shahan.

Paul L. Butt, Albuquerque, for appellee Beasley Hot Shot Service & Reliance Ins. Co.

## OPINION

SUTIN, Judge.

This is a workmen's compensation case in which two women and five children, separately, sought the benefits of the Workmen's Compensation Act. Their claims arose out of the death of Ronnie Shahan (Ronnie) on October 24, 1976.

Glenda Shahan (Glenda) was married to Ronnie on July 16, 1971 and had two minor children fathered by Ronnie. On August 25, 1976 Glenda and Ronnie obtained a Decree of Divorce in the District Court of Pottawatomie County, State of Oklahoma. The Decree ordered Ronnie to pay Glenda $200.00 per month for child support, and "that neither party shall marry any person other than each other for a period of six months from the date of this judgment." After Ronnie's death, Glenda had her divorce invalidated, and claimed compensation as a widow at the time of trial.

Sandra Shahan (Sandra) and Ronnie were married September 11, 1976 in Farmington, New Mexico, 17 days after Ronnie's divorce from Glenda. Sandra had three minor children born of previous marriages who were stepchildren of Ronnie. On October 24, 1976, six weeks after Sandra and Ronnie were married, Ronnie was killed while working within the scope of his employment.

On November 19, 1976, Sandra, on behalf of herself and her children, filed a claim for workmen's compensation. On the morning of the hearing, May 6, 1977, Glenda and her attorneys appeared and announced that they had two complaints to file for workmen's compensation—one for her two children, and one for herself as the widow of Ronnie. Though Sandra objected, nonetheless she desired to proceed with the hearing and the trial court allowed Glenda's complaints to be filed.

This was an unusual procedure. However, it was a reasonable exercise of discretion on the part of the trial court to resolve in one hearing all of the issues raised in three complaints. Sandra and her children were plaintiffs, while in effect, Glenda and her children were defendants. *Beasley* and *Reliance*, the actual defendants, did not contest the proceedings in the trial court or on appeal.

Following the filing of Glenda's complaints, the issues became whether Glenda was a dependent widow and whether Glenda's children were dependent children entitled to compensation. The trial court found that Glenda and Ronnie were divorced on August 25, 1976; that at the time of his death Ronnie was married to and had been living with Sandra; and that Sandra was Ronnie's widow. In addition, all five children were found to be dependents of the deceased.

Glenda failed to challenge any of the findings made by the trial court. As a result, "the trial court's findings are conclusive on appeal." *American General Companies v. Jaramillo*, 88 N.M. 182, 538 P.2d 1204 (Ct.App.1975).

Glenda appeals on behalf of her children. She abandoned the claim as a dependent widow. We affirm.

#### A. *Section 59–10–12.10(A) and (B) is constitutional.*

Glenda's sole contention on appeal is that § 59–10–12.10(A) and (B), N.M.S.A.1953 (2d Repl. Vol. 9, pt. 1) is unconstitutional. We disagree.

Section 59–10–12.10(A) and (B) reads as follows:

As used in the Workmen's Compensation Act, unless the context otherwise requires, the following persons, *and they only, shall be deemed dependents* and entitled to compensation under the provisions of the Workmen's Compensation Act:

A. *A child* under eighteen [18] years of age or incapable of self-support and unmarried.

B. The *widow* or widower, *only if living with the deceased at the time of his death, or legally entitled to be supported by him, including a divorced spouse entitled to alimony.* [Emphasis added.]

   *    *    *    *    *    *

The relation of dependency must exist at the time of the injury.

The word "child" is defined in § 59–10–12.11. It reads in pertinent part, as follows:

Child.—As used in the Workmen's Compensation Act, unless the context otherwise requires, "*child*" *includes stepchildren*, adopted children, posthumous children and acknowledged illegitimate children, but does not include married children unless dependent. . . . [Emphasis added.]

Glenda's argument is that actual dependency must be the determining factor in an award of workmen's compensation benefits and that only those who are actually dependent are members of the class entitled to workmen's compensation benefits. She contends that, in the absence of actual dependency, § 59–10–12.10(A) and (B) is unconstitutional because it discriminates un-

fairly between the classes of dependents. Glenda concludes that because she and her children were actually dependent upon Ronnie they are entitled to all the compensation benefits, whereas Sandra and her children who were not actually dependent are not entitled to compensation.

The trial court made findings of fact which support Glenda's claim of actual dependency. Glenda acknowledges that before § 59–10–12.10 was amended, actual dependency was the prerequisite to recovery. Today, under the revised statute, actual dependency is not a prerequisite as far as a spouse and minor children are concerned; Sandra, her children, and Glenda's children are dependents as a matter of law.

The legislature created two classes of dependents. (1) All children, as defined in § 59–10–12, constitute one class of dependents. Both natural and stepchildren are members of this class and must share equally in compensation awards. (2) The second class is composed of the widow or widower who was either living with a deceased spouse at the time of his or her death or was legally entitled to support.

Glenda argues that § 59–10–12.10 still indicates that a "relation of dependency must exist at the time of the injury," i. e., that it is a question of fact whether the dependent actually relied on support from the deceased. No reasons are given why this must be a question of fact. "The relation of dependency" simply means the character of the relationship that the family has to the deceased, set forth with particularity in § 59–10–12.10. On the relation of dependency as a legal relationship rather than a factual one, see *Kau v. Bennett*, 91 N.M. 162, 571 P.2d 819 (Ct.App.1977).

Relying on Article II, Section 18 and Article IV, Section 24 of the New Mexico Constitution, Glenda argues that the most compelling reason to reverse the judgment below is due to the inequitable classification of dependents; that her children were deprived of their equitable portion of the award through the award to Sandra's children who were not dependent on the deceased for support. These arguments are a "constitutional curiosity."

Glenda relies on *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). This case does not support Glenda's position. It involved the Louisiana Workmen's Compensation Act in which legitimate children, stepchildren, posthumous children and "*acknowledged* illegitimate children" were included within the definition of "children" for purposes of recovery under the Workmen's Compensation Act. The Supreme Court of Louisiana denied "*unacknowledged illegitimate children*" the right to recover on an equal footing with other children fathered by the deceased, including "*acknowledged* illegitimate children." The Supreme Court of the United States held that it was impermissible discrimination against "*unacknowledged* illegitimate children"; that an "unacknowledged illegitimate child" may suffer an much from the loss of a parent as a child born within wedlock or as an illegitimate child later acknowledged.

Impermissible discrimination was not based on "actual" dependency. It was impermissible because "*unacknowledged* illegitimate children" did not share equally with "*acknowledged* illegitimate children," children within the same class.

Section 59–10–12.11, supra, that defines a child also includes "*acknowledged* illegitimate children." We are not confronted with this problem, but the same principle of impermissible discrimination would apply if we denied compensation benefits to stepchildren.

■ Impermissible discrimination does not exist where natural children and stepchildren share equally in workmen's compensation benefits. Section 59–10–12.10(A) and (B) is not unconstitutional.

On this portion of the opinion, this Court agrees. On the award of attorney fees for services rendered in this appeal, we disagree.

The trial court found the present value of Sandra's award was $52,806.96, and awarded Sandra an attorney fee of $5,000.00. In addition, the trial court awarded Glenda an attorney fee of $2,000.00. Defendants were

smitten with an award of $7,000.00 in a trial between Sandra and Glenda, uncontested by defendants. On appeal, Sandra's award was not attacked. Glenda seeks only to deny Sandra's children any award. The issue to decide is whether Sandra's children and Glenda's children are entitled to an attorney fee for services rendered in this appeal.

The opinion of the majority of this Court follows this discussion.

The author of this opinion believes that Sandra's children (Sandra) and Glenda's children (Glenda) are not entitled to an attorney fee for three reasons. (1) Section 59–10–23(D) does not give an appellate court the power to award an attorney fee for services rendered in an appeal; (2) If it does, no legal basis exists for allowing an attorney fee; and (3) If Sandra is entitled to an attorney fee, then Glenda is entitled to one. Both of these claims were affirmed on appeal.

(1) *Section 59–10–23(D) does not allow an attorney fee in an appeal.*

Sandra contends that she is entitled to an attorney fee in this appeal because she was forced to have an attorney represent her in a civil war with Glenda; that Glenda attacked her award and she had to defend herself to protect this award.

Section 59–10–23(D) provides, in substance, that when a claimant recovers compensation in the trial court, ". . . then the compensation to be paid the attorney for the claimant shall be fixed by the court trying the same *or the Supreme Court upon appeal* in such amount as the court may deem reasonable and proper . . ." [Emphasis added.]

This statute is clear and unambiguous. It states that the trial court "or" the Supreme Court on appeal shall fix an attorney fee for services rendered a workman in a successful trial of a case. It does not grant statutory authority for the Supreme Court or the Court of Appeals to award an attorney fee for services rendered a workman in an appeal of the case. It is established law that in the absence of statutory authority,

this Court does not have inherent power to allow an attorney fee for services rendered in an appeal. *New Mexico State Highway Department v. Bible*, 38 N.M. 372, 34 P.2d 295 (1934) (on rehearing).

A history of this statute established that § 59–10–23(D) did not give statutory authority for an appellate court to award an attorney fee for services rendered in an appeal.

Under the original section adopted in 1929, the language read:

. . . then the compensation to be paid the attorney for the claimant may be increased at the discretion of the court trying the same . . . . [Laws 1929, ch. 113, § 22, p. 231.] [C.S.1929, § 156–122.]

Under this language, the power to increase attorney fees rested only in the trial court. *Bible*, supra.

In 1937, the words "or the Supreme Court upon appeal" were inserted in § 22 of the 1929 Act. Laws 1937, ch. 92, § 11, p. 250.

This additional language caused the section to read:

. . . then the compensation to be paid the attorney for the claimant may be increased at the discretion of the court trying the same, *or the Supreme Court upon appeal* . . . . [Emphasis added.]

The purpose of this amendment was to grant either the trial court or the Supreme Court statutory power to increase the amount of the attorney fee for services rendered at trial. From 1937 to 1955, the Supreme Court, when the circumstances warranted it, awarded additional fees on appeal to successful claimants. Perhaps the court interpreted § 11 to mean that an award of an attorney fee on appeal is an increase of the fee allowed by the trial court.

In 1955, the legislature amended § 11 of the 1937 Act and substituted the language set forth in § 59–10–23(D). The issue of an *increased award* at the direction of the trial court "or the Supreme Court upon appeal" was deleted, and instead the following was inserted:

. . . then the compensation to be paid the attorney for the claimant shall be *fixed by the court* trying the same *or the Supreme Court upon appeal* in such amount as *the court* may deem reasonable and proper . . . . [Emphasis added.]

This amended language removed the former statutory power which previously had permitted an appellate court to increase the award of an attorney fee. Now, an attorney fee awarded the successful claimant below "shall be fixed [*either*] by the court trying the same *or* the Supreme Court upon appeal." No provision is made for an additional fee on appeal.

To grant an appellate court statutory authority to award a claimant an additional attorney fee on appeal, the statute must read in comparable language:

. . . then the compensation to be paid the attorney for claimant shall be fixed by the court trying the same in such amount as the court may deem reasonable and proper. On appeal, compensation to be paid the attorney for claimant for services rendered shall be fixed by the Supreme Court.

My brethren hold that the use of the word "or" was merely a matter of legislative imprecision, and that the word "or" shall be changed to read "and." The trouble with the word "or" has been with courts for a long time. See "OR," Words and Phrases, 53–138 (1972).

" 'Or' obviously is a disjunctive particle and means one or the other of two propositions; never both." *Bensalem Tp. Sch. Dist. v. County Com'rs of Bucks Cty.*, 8 Pa.Cmwlth. 411, 303 A.2d 258 (1973). In *Petition of First National Bank v. Bernalillo County Evaluation Protest Board*, 90 N.M. 110, 560 P.2d 174 (Ct.App.1977), we said that the word "or" was an alternative expression of "either one or another"; that its ordinary meaning should be followed unless it renders the statute doubtful or uncertain. We held that the statutory language involved was clear and unambiguous.

A statute that uses the word "or" or "and" must be given effect according to its terms if the language therein is clear and unambiguous. We need not speculate on the intention of the legislature in its enactment. *Board of Insurance Com'rs v. Guardian Life Ins. Co.*, 142 Tex. 630, 180 S.W.2d 906 (1944).

This rule of statutory construction applies where the statute allows attorney fees as costs "assessed against the employer by a single commissioner, by the full commission on appeal *and* by the supreme court on appeal consistent with the services rendered before *each* tribunal . . . ." [Emphasis added.] *Capaldi v. Liberty Tool & Gage Works, Inc.*, 99 R.I. 236, 206 A.2d 639 (1965); *Tirocchi v. United States Rubber Company*, 102 R.I. 617, 232 A.2d 593 (1967).

This rule of statutory construction has long prevailed in New Mexico. *Keller v. City of Albuquerque*, 85 N.M. 134, 509 P.2d 1329 (1973). Section 59–10–23(D) is free from ambiguity. There is no room for construction. Our duty is to give this statute effect as it is written, because legislative intent is to be determined primarily from the language used. *Keller*, supra. We only search for legislative intent when we seek to interpret an ambiguous statute. *State v. Clark*, 80 N.M. 340, 455 P.2d 844 (1969).

The only case that authorized an attorney fee on appeal is *Lauderdale v. Hydro Conduit Corporation*, 89 N.M. 579, 585, 555 P.2d 700, 706 (Ct.App.1976). This court said:

Attorney fees on appeal are authorized if the employer refuses to pay compensation and the claimant thereafter collects compensation in the trial court.

No authority is cited for this conclusion. Neither is it found in the statute. See *Alloy Surfaces Company v. Cicamore*, 221 A.2d 480 (Del.1966), where the statute allows the Superior Court to award an attorney fee to a successful claimant for services rendered from the Superior Court to the Supreme Court.

The decision in *Lauderdale* was based on a finding of statutory authority and equitable principles. I cannot agree that the statute permitted such a result nor can I find that the facts of the instant case permit the equitable intervention of an award of an attorney fee.

Nevertheless, after 1955, without explanation or citation of authority, additional attorney fees have been awarded in the appellate courts as a matter of course. However, the Supreme Court has not, in any opinion, established the right of an appellate court to award an additional attorney fee on appeal.

Sandra is not entitled to an award of an attorney fee in this Court as a matter of law under the language of § 59–10–23(D).

(2) *There is no legal basis for allowing an attorney fee on appeal.*

A review of the record in the instant case shows that defendants, by answer to Sandra's complaint, admitted all of the allegations except her status as a dependent widow. Sandra and defendants agreed on the statutory maximum amount of compensation payments. Twenty-seven weeks of compensation were paid through May 22, 1977. Defendants paid the $1,500.00 funeral expenses. The parties agreed that 573 weeks of compensation were due. Defendants did not contest the proceedings. The dispute was between Sandra and Glenda.

The hearing in the trial court was conducted in one-half day that consumed 37 pages of argument and testimony. No depositions were taken. Sandra filed memorandum briefs, but the briefs do not appear of record.

The award of $5,000.00 as an attorney fee to Sandra was about 10% of the present value of Sandra's award. That amount is a substantial fee. It was not contested by defendants and defendants did not appeal from the judgment of the court.

On appeal, defendants are at a stand. They are in doubt as to further progress. They cannot support the position of Sandra or Glenda. They have no duty to defend Sandra's compensation award or the judgment of the trial court. There is some doubt as to whether defendants were made parties to this appeal. They moved to have

themselves dismissed as parties to this appeal. We decided to rule on this motion later, but we have not. No point of error raises any contention against them. The motion should be granted, and an additional attorney fee denied. *Parson v. Parson*, 387 S.W.2d 764 (Tex.Civ.App.1965).

In *Lauderdale*, the factual situation on appeal was complicated, complex and confounded. This Court, in the exercise of its discretion determined that it was fair and equitable to award attorney fees to the successful party on appeal. In the instant case, it is not.

To grant Sandra any relief against defendants would be unfair and inequitable. Defendants have already been required to pay more than generous attorney fees. They should not be required to pay more for the reason that Glenda was dissatisfied with the judgment below and appealed therefrom.

I would deny Sandra any attorney fee on this appeal, as well as any interest on her attorney fee allowed below, and not any interest on any accumulated compensation benefits that may be due, if any, from May 22, 1977.

(3) *Glenda is not entitled to an attorney fee in this appeal.*

During oral argument, Glenda also requested an additional attorney fee. I would deny it. But when this Court becomes so liberal in its interpretation of statutory law that it follows *Lauderdale*, then it is surprising to note that no consideration was given to Glenda's claim for an attorney fee.

OPINION

HERNANDEZ, Judge.

We concur in Judge Sutin's holding that § 59–10–12.10(A) and (B) does not offend against the Constitution of the United States or that of the State of New Mexico. We do not agree, however, with his opinion regarding attorneys' fees.

Section 59–10–23(D), N.M.S.A.1953 (Repl. Vol. 9, pt. 1, 1974) reads in pertinent part as follows:

"In all cases where compensation to which any person shall be entitled under the provisions of Workmen's Compensation Act shall be refused and the claimant shall thereafter collect compensation through court proceedings in an amount in excess of the amount offered in writing by an employer thirty [30] days or more prior to the trial by the court of the cause, then the compensation to be paid the attorney for the claimant shall be fixed by the court trying the same *or the Supreme Court upon appeal* in such amount as the court may deem reasonable and proper and when so fixed and allowed by the court shall be paid by the employer . . . ." [Emphasis added.]

Judge Sutin argues that the use of the word "or" in the statute means that appellate courts do not have authority to award fees for the services of a successful claimant's attorney on appeal. We hold that the use of the word "or" in § 59–10–23(D) was merely a matter of legislative imprecision and was not meant to bar awards of attorney fees on appeal. We base this holding on the following considerations:

Since the passage of § 59–10–23(D) in 1955 (Ch. 274, § 1, 1955 N.M.Laws), our Supreme Court has routinely awarded attorneys' fees to successful workmen's compensation claimants on appeal; the Court of Appeals has done the same since it was given jurisdiction over workmen's compensation cases at the time of its creation. Section 16–7–8(B), N.M.S.A.1953 (Repl. Vol. 4, 1970). Although § 59–10–23(D) refers in terms only to the Supreme Court, the Court of Appeals also has authority to grant attorneys' fees under this section. *See, Lauderdale v. Hydro Conduit Corporation*, 89 N.M. 579, 555 P.2d 700 (Ct.App.1976). No party has ever argued successfully that § 59–10–23(D) bars awards of attorney fees on appeal.

Despite the fact that so many awards of attorney fees on appeal have been made since 1955 and that the Workmen's Com-

pensation Act has been frequently amended since 1955, the legislature has never amended § 59–10–23(D) to indicate unequivocally to the courts that they are not to award attorney fees for appellate representation in workmen's compensation cases.

Everything about § 59–10–23, read as a whole, indicates that the intent of the legislature was not to forbid the appellate courts to award attorneys' fees for successful appeals of workmen's compensation cases. The opening paragraph of § 59–10–23 reads:

> "It shall be unlawful for any attorney to receive or agree to receive any fees or payment directly or indirectly in connection with any claim for compensation under the Workmen's Compensation Act . . . except as hereinafter provided . . . ."

Subsections A through H of § 59–10–23 contain the exclusive provisions covering payment of claimants' attorneys in Workmen's Compensation cases. If a claimant's attorney cannot recover fees under this section, he cannot recover them at all; indeed, he is guilty of a misdemeanor, with a mandatory fine and a possible jail sentence, if he receives payment except as provided in this section. Section 59–10–23(H).

We follow the commonsense rules of statutory construction which this court has long applied:

> "We are committed to an acceptance of the intent of the language employed by the legislature rather than the precise definition of the words themselves. [Citations omitted.] And, in construing a statute, the legislative intent must be given effect by adopting a construction which will not render the statute's application absurd or unreasonable. [Citation omitted.] Not only must the legislative intent be given effect, but the court will not be bound by a literal interpretation of the words if such strict interpretation would defeat the intended object of the legislature. [Citation omitted.]" *State v. Nance*, 77 N.M. 39, 419 P.2d 242 (1966).

Applying this rule, it is apparent that the words "or the Supreme Court upon appeal" in § 59–10–23(D) should be understood as though they read "*and* the Supreme Court upon appeal."

█ Given the above construction of the statute, there still remains the problem of whether this court should award attorney fees on appeal to a successful claimant in a case such as this one, which is in the nature of an interpleader action. Defendants admitted that they were liable to some claimant, but they were essentially bystanders while the contesting claimants tried to establish their rights. Two earlier New Mexico cases have presented similar questions: *Employers Mutual Liability Ins. Co. of Wis. v. Jarde*, 73 N.M. 371, 388 P.2d 382 (1963); and *Lauderdale v. Hydro Conduit Corporation, supra.*

In *Jarde, supra,* the employer contended that it had not "refused" to pay compensation as required in § 59–10–23(D), because it was in fact paying some benefits to the successful claimant before the trial; this contention was rejected because the employer had not offered the claimant, before trial, as much money as the claimant ultimately won at trial and on appeal. Section 59–10–23(D). The Supreme Court held that it was proper for the trial court to award attorney fees, and it also awarded fees, without comment, to the attorneys for the successful claimants on appeal. In *Lauderdale, supra,* the employer claimed that the Court of Appeals had no authority to award attorney fees on appeal in an interpleader situation where the employer did not contest the award. The employer failed to establish that it had not "refused" to pay benefits under the terms of § 59–10–23(D). The Court of Appeals said:

> "The employer does not claim that the Court of Appeals lacks authority to award attorney fees on appeal. . . . Attorney fees *on appeal* are authorized [by § 59–10–23(D)] if the employer refuses to pay compensation and the claimant thereafter collects compensation in the trial court. In this situation, attorney fees may be awarded against the employer, both *in the trial court and on appeal.*" [89 N.M. 579, 585, 555 P.2d 700, 706.] [Emphasis added.]

**470**

This reasoning applies *a fortiori* to the case at bar. The employer paid no compensation to the successful claimants, Sandra Shahan and her three children, until three weeks after Sandra filed suit. The record does not show that any offer of settlement was made to Sandra more than 30 days before trial of an amount equal to what she won at trial. For purposes of § 59–10–23(D), therefore, the employer had refused compensation to the claimants who were ultimately successful. This does not mean that the employer was at fault; as it argued at oral argument, it had no way of knowing which claimants would succeed and how much they would be awarded, and it did not deny that it was liable to *some* claimant. The award of attorney fees in *Jarde* and *Lauderdale* was not based on fault. The court in those cases decided as a matter of policy that it would give attorney fees in interpleader situations, in keeping with the general policy established by the legislature in § 59–10–23(D) of not making successful claimants bear the burden of attorney fees when the claimant has to go to court to enforce his or her right to benefits. This works some hardship on employers, but attorney fees are presumably one of the expenses they insure against. In view of the very substantial award of attorney fees by the court below and the narrowness of the issue on appeal, Sandra Shahan is awarded $250.00 for the services of her attorneys on appeal.

LOPEZ, J., concurs.

SUTIN, J., dissenting.

The judgment of the trial court is affirmed. An attorney fee for services rendered Sandra in this appeal is granted in the sum of $250.00. Glenda shall pay the costs of this appeal.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.